**STATE of Minnesota, Appellant,**

v.

**Scott Wade RAMEY, Respondent.**

**No. A04–1056.**

Supreme Court of Minnesota.

Sept. 14, 2006.

Mike Hatch, Attorney General, James B. Early, Asst. Attorney General, St. Paul, MN, Douglas L. Ruth, Steele County Attorney, Owatonna, MN, for Appellant.

Davi E. Axelson, Office of the State Public Defender, Minneapolis, MN, for Respondent.

## OPINION

MEYER, Justice.

This appeal arises from a jury trial in which respondent, Scott Wade Ramey, was found guilty of violating an order for protection. The court of appeals reversed Ramey's conviction, holding that the district court erred in giving a no-adverse-inference instruction without Ramey's request or consent and the prosecutor committed misconduct during the closing argument. The state petitioned for review, claiming that the court of appeals erred in applying the two-tiered analysis from *State v. Caron*, 300 Minn. 123, 218 N.W.2d 197 (1974), to Ramey's claim of prosecutorial misconduct because Ramey had not made a contemporaneous objection to the asserted misconduct. We granted review on two issues: (1) whether the plain error doctrine applies to unobjected-to prosecutorial misconduct, and (2) the legal standard that should be applied in determining whether the asserted misconduct was prejudicial. We hold that, on appeal, the plain error doctrine applies to unobjected-to prosecutorial misconduct. However, once the defendant has borne the burden of showing that the prosecutorial misconduct was error that was plain, the state bears the burden of showing that the error did not affect the defendant's substantial rights. We reverse and remand to the court of appeals to determine whether the prosecutor's conduct constituted plain error affecting substantial rights in accordance with this opinion.

Ramey and S.S. dated for approximately one month in 2001. In February 2003, S.S. obtained an order for protection against Ramey in response to his unwanted attempts to contact her, which sometimes amounted to 20–30 phone calls per day. On April 8, 2003, at approximately 4:00 p.m., S.S. was sleeping at her home. Ramey woke S.S. from her sleep by kissing her on the cheek. S.S. asked Ramey to leave her house multiple times, and he eventually did. S.S. called the police, and the responding officer discovered that Ramey had not yet been served with the order for protection.

Between 8:30 and 9:00 p.m. that night, Ramey returned to S.S.'s home. S.S. did not allow Ramey into the house and instead called 911. When law enforcement officers arrived, Ramey was still outside of

S.S.'s home. The responding officer served Ramey with a short-form notification of the order for protection and explained to Ramey that he was to have no contact with S.S. Ramey signed a form acknowledging that he understood the order.

At approximately 2:00 a.m. on April 9, while S.S. was working, she received a telephone call. She recognized the caller as Ramey, immediately hung up the phone, and called the police.

Because Ramey had three prior domestic-violence convictions, he was charged with felony violation of an order for protection. Minn.Stat. § 518B.01, subd. 14(d)(1) (2004). The case was tried to a jury, which found Ramey guilty of violating the order for protection. The court convicted Ramey and imposed a 21-month stayed sentence and a $3,000 fine, with $2,000 stayed for five years.

Ramey appealed his conviction, claiming the district court erred in giving a no-adverse-inference instruction without his request or consent and that the prosecutor had committed misconduct during the state's closing argument. *State v. Ramey,* No. A04–1056, 2005 WL 832054, at *1 (Minn.App. Apr.12, 2005). Ramey did not object at trial to either the giving of the instruction or to any statements during the state's closing argument. *Id.* at *2.[1]

Applying the plain error doctrine, the court of appeals held that the district court committed plain error when it gave the no-adverse-inference instruction in the ab-

sence of Ramey's request. *Id.* However, when addressing the issue of prosecutorial misconduct, the court of appeals applied the *Caron* two-tiered approach for reviewing prosecutorial misconduct. *Ramey,* 2005 WL 832054, at *2. It determined that the misconduct was of the "less serious" variety but that, when viewed in the light of the no-adverse-inference instruction, the misconduct substantially influenced the jury to convict and denied Ramey a fair trial. *Id.* at *3. The court of appeals did not make it clear whether it would have granted a new trial based only on the no-adverse-inference instruction. *Id.* The state petitioned for review.

## I.

In this case, we must determine whether the court of appeals applied the correct analysis to Ramey's claims of prosecutorial misconduct. This question is one of law, which we review de novo. *See Modrow v. JP Foodservice, Inc.,* 656 N.W.2d 389, 393 (Minn.2003).

We first address whether the plain error doctrine applies to unobjected-to prosecutorial misconduct. Ordinarily, the defendant's failure to object to an error at trial forfeits appellate consideration of the issue. *State v. Darris,* 648 N.W.2d 232, 241 (Minn.2002). On appeal, an unobjected-to error can be reviewed only if it constitutes plain error affecting substantial rights. Minn. R.Crim. P. 31.02. The

---

1. In the court of appeals, Ramey raised as error the following comments, which he claimed improperly interjected the state's opinion and improperly vouched for witnesses:

    (1) "The State charged Mr. Ramey, entered this trial believing he's guilty."

    (2) "That would be a big coincidence if it wasn't the defendant, and the State believes that would be too big of a coincidence. The

State believes that's too big of a bridge to jump."

    (3) "The State believes her testimony is credible. The officer[s'] testimony is credible and you should believe what they told you."

    (4) "We suggest there [is] no evidence that you can find that [S.S.] was somehow affected, that she couldn't have—couldn't have accurately identified Ramey's voice."

plain error doctrine is derived from the rules of criminal procedure. *See* Fed. R.Crim.P. 52(b); Minn. R.Crim. P. 31.02. In 1975, we adopted Minnesota Rule of Criminal Procedure 31.02, which states: "Plain errors or defects affecting substantial rights may be considered * * * on appeal although they were not brought to the attention of the trial court." We first cited the plain error doctrine in 1978. *See, e.g., State v. Taylor,* 264 N.W.2d 157, 159 (Minn.1978) (quoting *Silber v. United States,* 370 U.S. 717, 717–18, 82 S.Ct. 1287, 8 L.Ed.2d 798 (1962)); *State v. Gruber,* 264 N.W.2d 812, 817 (Minn.1978).

Prior to the development of the plain error doctrine, in *Caron* we adopted a two-tiered standard to be applied when determining whether prosecutorial misconduct required a new trial:[2]

> [I]n cases involving unusually serious prosecutorial misconduct this court has required certainty beyond a reasonable doubt that the misconduct was harmless before affirming. * * * On the other hand, in cases involving less serious prosecutorial misconduct this court has applied the test of whether the misconduct likely played a substantial part in influencing the jury to convict.

300 Minn. at 127–28, 218 N.W.2d at 200.

Our jurisprudence has not been completely consistent on the standard applicable to an analysis of unobjected-to prosecutorial misconduct. For example, in the 1980s, while some cases used the *Caron* standard to analyze unobjected-to prosecutorial misconduct, we also applied the plain error doctrine in other cases of unobjected-to prosecutorial misconduct. *Compare State v. Brown,* 348 N.W.2d 743, 747 (Minn.1984) (applying *Caron* standard, using failure to object as a factor, and

finding that the error was harmless), *with State v. Atkins,* 355 N.W.2d 410, 411 (Minn.1984) (discussing "plain error" in the context of analyzing unobjected-to prosecutorial misconduct), *and State v. Bland,* 337 N.W.2d 378, 384 (Minn.1983) (same).

In 1998, we decided *State v. Griller,* which clarified the plain error analysis. 583 N.W.2d 736 (Minn.1998). Citing *Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), we held that

> before an appellate court reviews an unobjected-to error, there must be (1) error; (2) that is plain; and (3) the error must affect substantial rights. If these three prongs are met, the appellate court then assesses whether it should address the error to ensure fairness and the integrity of the judicial proceedings.

*Griller,* 583 N.W.2d at 740 (footnote omitted). Since *Griller* was decided, and particularly in the last few years, we have most often applied the plain error doctrine, rather than the *Caron* standard, when reviewing cases involving unobjected-to prosecutorial misconduct. *See, e.g., State v. MacLennan,* 702 N.W.2d 219, 235 (Minn. 2005). By contrast, the *Caron* standard has mainly been limited to cases involving objected-to prosecutorial misconduct since the late 1990s. *See, e.g., State v. Cabrera,* 700 N.W.2d 469, 473–75 (Minn.2005) (applying the *Caron* standard to objected-to prosecutorial misconduct).

Applying the plain error doctrine encourages defendants to object at trial, which is preferred because the district court is in an unique position to determine what actions constitute prosecutorial misconduct. *State v. Steward,* 645 N.W.2d 115, 121 (Minn.2002). When a defendant does not make a contemporaneous objec-

---

**2.** The defendant in *Caron* had not objected to the alleged misconduct. 300 Minn. at 127, 218 N.W.2d at 200.

tion, the district court does not have the opportunity to rule on the misconduct or make a determination as to whether a corrective instruction is required or appropriate. *See Brown,* 348 N.W.2d at 747 ("[C]arefully worded instructions by the trial court can ameliorate the effect of improper prosecutorial argument."). Defendants should be encouraged to object at trial because "[o]bjections provide the trial court an opportunity to prevent or cure the effects of alleged prosecutorial misconduct." *Rairdon v. State,* 557 N.W.2d 318, 323 n. 5 (Minn.1996). Although we recognized in *State v. Caldwell* that curative instructions will not solve every problem prosecutorial misconduct creates, 322 N.W.2d 574, 590–91 (Minn. 1982), the district court is in the best position to attempt to remedy the effects of the misconduct, and it should be given this opportunity in the first instance.

In the past we have also recognized that defendants may decline to object at trial to secure reversible error on review. *State v. Ray,* 659 N.W.2d 736, 747 n. 4 (Minn.2003); *State v. Stofflet,* 281 N.W.2d 494, 497 (Minn.1979). We reemphasize here what we articulated in *Ray:*

> We would be concerned if defense counsel were deliberately passing on such an objection with the hope of securing reversible error for appeal and, as a result, getting two chances at a jury trial. We again caution defense counsel that the failure to object to improper closing ar-

gument may waive any claim of prosecutorial misconduct on appeal.

659 N.W.2d at 747 n. 4. Application of the plain error doctrine addresses the possibility that defendants might deliberately pass on objections.[3]

■ At the same time, the plain error doctrine "tempers the blow of a rigid application of the contemporaneous-objection requirement." *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). The doctrine employs a "careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed." *Id.* (quoting *United States v. Frady,* 456 U.S. 152, 163, 71 L.Ed.2d 816 (1982)). Therefore, we conclude that appellate courts should use the plain error doctrine when examining unobjected-to prosecutorial misconduct.

## II.

■ This brings us to the second question for which we granted review: the legal standard to be applied when determining if unobjected-to prosecutorial misconduct is prejudicial. Because we have determined that the plain error doctrine applies to unobjected-to prosecutorial misconduct, the proper legal standard for determining prejudice is whether the plain error affected the defendant's substantial rights.[4] *See Griller,* 583 N.W.2d at 740. However, although the *Griller* formulation applies, we conclude that, when prosecuto-

---

3. We have also held that where defense counsel does not object to improper prosecutorial argument and instead chooses to respond in the defense summation, the defendant forfeits consideration of the issue on appeal. *State v. Whisonant,* 331 N.W.2d 766, 769 (Minn. 1983).

4. Our decision today leads us to conclude that the *Caron* two-tiered standard is no longer applicable to cases involving unobjected-to

prosecutorial misconduct. Although *Caron* addressed an instance of unobjected-to prosecutorial misconduct, the concept of plain error was not embraced in Minnesota until after *Caron* was decided. We leave for another day the question of whether the *Caron* two-tiered approach should continue to apply to cases involving objected-to prosecutorial misconduct.

rial misconduct reaches the level of plain or obvious error—conduct the prosecutor should know is improper—the prosecution should bear the burden of demonstrating that its misconduct did not prejudice the defendant's substantial rights. Although this is a departure from *Griller* in that *Griller* places the burden of the entire plain error doctrine on the defendant, 583 N.W.2d at 741, we conclude that prosecutorial misconduct is the type of trial error that justifies a shift in the burden for determining whether the plain error affected the defendant's substantial rights.

The overarching concern regarding prosecutorial misconduct, expressed in many of our cases, is that such misconduct may deny the defendant's right to a fair trial. *See, e.g., State v. Powers*, 654 N.W.2d 667, 678 (Minn.2003); *State v. Wahlberg*, 296 N.W.2d 408, 420 (Minn. 1980). Prosecutors have an affirmative obligation to ensure that a defendant receives a fair trial, no matter how strong the evidence of guilt. *State v. Henderson*, 620 N.W.2d 688, 701–02 (Minn.2001); *State v. Sha*, 292 Minn. 182, 185, 193 N.W.2d 829, 831 (1972). This is so because, as we have repeatedly said, a prosecutor "is a minister of justice whose obligation is to guard the rights of the accused as well as to enforce the rights of the public." *State v. Penkaty*, 708 N.W.2d 185, 196 (Minn. 2006) (citations omitted); *accord State v. Salitros*, 499 N.W.2d 815, 817 (Minn.1993). The role of an American prosecutor as a minister of justice is firmly established. *See Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935) (government attorney is the representative "of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose inter-

est, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done"); *ABA Standards for Criminal Justice: Prosecution Function & Defense Function*, Standard 3–1.2(c) (3d ed. 1993) ("The duty of the prosecutor is to seek justice, not merely to convict."); Nat'l Dist. Attys. Ass'n, *National Prosecution Standards*, Standard 1.1 (2d ed. 1991) ("The primary responsibility of prosecution is to see that justice is accomplished."). Thus, a prosecutor may not seek a conviction at any price. *State v. Porter*, 526 N.W.2d 359, 362–63 (Minn.1995); *Salitros*, 499 N.W.2d at 817.

We have identified numerous kinds of trial conduct that are improper for prosecutors. Some examples are: eliciting inadmissible evidence, *State v. Harris*, 521 N.W.2d 348, 353–54 (Minn.1994); alluding in argument to the defendant's exercise of the right not to testify, *State v. Whittaker*, 568 N.W.2d 440, 450–51 (Minn.1997), or to the defendant's failure to call witnesses, *State v. Parker*, 417 N.W.2d 643, 647 (Minn.1988); misstating the presumption of innocence, *Salitros*, 499 N.W.2d at 818, or the burden of proof, *State v. Coleman*, 373 N.W.2d 777, 782 (Minn.1985); interjecting the prosecutor's personal opinion about the veracity of witnesses, *State v. Ture*, 353 N.W.2d 502, 516 (Minn.1984); inflaming the passions and prejudices of the jury, *Porter*, 526 N.W.2d at 363–64; disparaging the defendant's defense to the charges, *State v. Griese*, 565 N.W.2d 419, 427 (Minn.1997); and injecting race into the case when race is not relevant, *Cabrera*, 700 N.W.2d at 475. Many of these prohibitions also appear in standards of conduct the American Bar Association has established for prosecutors and defense counsel alike.[5] *See ABA Standards for*

---

5. We cited these standards in *Salitros* and noted that just as a prosecutor is a minister of justice, defense counsel "is neither a mouth-piece nor an ordinary agent, but a professional advocate governed by rules of professional ethics and decorum." 499 N.W.2d at 817.

*Criminal Justice, Prosecution Function & Defense Function,* Standards 3–5.5 to 3–5.9 (prosecution), 4–7.4 to 4–7.8 (defense). We expect that prosecutors, as well as defense counsel, are aware of our case law proscribing particular conduct as well as the standards of conduct prescribed by the ABA. Nevertheless, we continue to see cases in which prosecutors persist in clearly proscribed conduct. *See, e.g., State v. Mayhorn,* 720 N.W.2d 776 (Minn.2006) (prosecutor expressed personal opinion about defendant's guilt, commented on defendant's failure to call witness and disparaged defendant's alibi defense, among other improprieties).

Courts have struggled to effectively respond to the problems presented when prosecutors engage in off-limits conduct. The Illinois Supreme Court has referred to prosecutorial misconduct as "a problem that courts across the country have, for the most part, been unable or unwilling to control." *People v. Johnson,* 208 Ill.2d 53, 281 Ill.Dec. 1, 803 N.E.2d 405, 412 (2003). A Florida intermediate appellate court described a "veritable torrent of cases" involving significant prosecutorial improprieties, noted that "this pattern of conduct cannot be tolerated," and expressed frustration that the court's "prior efforts to eliminate the practice have proven entirely inadequate." *Thornton v. State,* 852 So.2d 911, 914–15 (Fla.Dist.Ct.App.2003) (citation omitted). The problem is not new: 60 years ago Judge Jerome Frank of the Second Circuit Court of Appeals expressed his frustration that denouncing serious misconduct but not reversing shows an "attitude of helpless piety" and breeds a cynical attitude toward the judiciary. *United States v. Antonelli Fireworks Co.,* 155 F.2d 631, 661 (2d Cir.1946) (Frank, J., dissenting).

Our past attempts to respond to the problem of prosecutorial misconduct have ranged from the two-tiered *Caron* approach, with an enhanced harmless-error standard for so-called "serious" misconduct, to reversing prophylactically in egregious cases without inquiring into prejudice, in the exercise of our supervisory powers. *See Salitros,* 499 N.W.2d at 820; *Caron,* 300 Minn. at 127–28, 218 N.W.2d at 200. As stated above, since *Griller* was decided, we have generally applied plain-error analysis when reviewing claims of unobjected-to prosecutorial misconduct. *See, e.g., MacLennan,* 702 N.W.2d at 235.

Ramey would have us address the problem of recurrent prosecutorial misconduct by returning to the pre-*Griller* approach of considering the defendant's failure to object simply as a factor weighing against granting a new trial, and scrapping the *Caron* two-tier test in favor of a single, harmless-beyond-a-reasonable-doubt standard when assessing prejudice. The state asks us to continue to apply *Griller* plain-error analysis in cases of unobjected-to prosecutorial misconduct, with the burden on the defendant to demonstrate prejudice.

Neither of these suggested approaches has adequately addressed the issue. The pre-*Griller* approach did not curtail improper conduct by prosecutors and the difficulty with applying the higher harmless-error standard in all cases would make "less serious" misconduct subject to less regulation by the appellate courts. Similarly, placing the burden on the defendant to show prejudice has not been adequate to deter prosecutorial misconduct in the eight years since *Griller* was decided.

In *Salitros* we also noted that because only convicted defendants can ordinarily appeal following trial, our opinions tend to focus on prosecutorial misconduct but that we are aware that the problem of trial misconduct is not limited to the prosecution. *Id.*

Therefore, we conclude that the burden should be on the prosecution to show lack of prejudice before we will affirm a conviction.

■ As stated previously, under *Griller*, before an appellate court reviews unobjected-to trial error, there must be (1) error, (2) that is plain, and (3) affects substantial rights. *Griller*, 583 N.W.2d at 740. If these three prongs are satisfied, the court then assesses whether the error should be addressed to ensure fairness and the integrity of the judicial proceedings. *Id.* In *Griller*, we held that the defendant bears the burden of persuasion on the third prong of the test. *Id.* at 741 (citing *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). We also stated that we consider this to be a "heavy burden." *Id.*

■ Under the approach we now adopt, the burden would continue to be on the nonobjecting defendant to demonstrate both that error occurred and that the error was plain. This is as it should be because the defendant did not seek any corrective action on the part of the trial judge. "An error is plain if it was 'clear' or 'obvious.'" *State v. Strommen*, 648 N.W.2d 681, 688 (Minn.2002) (citing *Olano*, 507 U.S. at 734, 113 S.Ct. 1770). Usually this is shown if the error contravenes case law, a rule, or a standard of conduct. Under this approach, when the defendant demonstrates that the prosecutor's conduct constitutes an error that is plain, the burden would then shift to the state to demonstrate lack of prejudice; that is, the misconduct did not affect substantial rights. *Griller*, 583 N.W.2d at 741; Minn. R.Crim. P. 31.02. Employing our recent formulation of the prejudice standard in the prosecutorial misconduct context, the state would need to show that there is no

"reasonable likelihood that the absence of the misconduct in question 'would have had a significant effect on the verdict of the jury.'" *MacLennan*, 702 N.W.2d at 236 (citations omitted).

■ Our new approach of shifting the burden to the prosecution to show lack of prejudice in prosecutorial misconduct cases best serves policy concerns. The benefits of this approach are to better allow substantive review of conduct that prosecutors should know is clearly forbidden and to put the onus on the prosecution to defend against the prejudicial effect of its own misconduct. A further benefit of this approach is to provide more scrutinizing review by the court of appeals, where a large majority of prosecutorial misconduct appeals are decided.[6]

Placing the burden on the prosecution to show lack of prejudice is not a novel approach. In *Chapman v. California*, the case in which the United States Supreme Court held that constitutional error can be harmless, the Court placed the burden on the government, stating:

> Certainly error, constitutional error * * * casts on someone other than the person prejudiced by it a burden to show that it was harmless. It is for that reason that the original common-law harmless-error rule put the burden on the beneficiary of the error either to prove that there was no injury or to suffer a reversal of his erroneously obtained judgment.

386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The Court "requir[ed] the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id. Chapman* was itself a prosecutorial misconduct case, in-

---

**6.** The court of appeals does not exercise supervisory powers that are reserved to this court. *State v. Gilmartin*, 535 N.W.2d 650, 653 (Minn.App.1995).

volving impermissible comment on the defendant's election not to testify at trial. *Id.* at 24–25, 87 S.Ct. 824. Similarly, at least two states, including Wisconsin, follow *Chapman* and continue to place the burden on the prosecution to show lack of prejudice. *See Wilson v. State,* 874 So.2d 1155, 1159 (Ala.Crim.App.2003) (holding state must establish that prosecutorial misconduct did not injuriously affect defendant's substantial rights); *State v. King,* 205 Wis.2d 81, 555 N.W.2d 189, 194 (1996) (holding that under state's plainerror rule, burden is on prosecution to prove that plain error is harmless).

Reducing the incidence of prosecutorial misconduct is a shared obligation of prosecutors, who need to be aware of and comply with prescribed standards of conduct; defense counsel, who should seek corrective action by the trial court when misconduct occurs; and trial courts that, we have stated, "have a duty to intervene and caution the prosecutor, even in the absence of objection, in appropriate circumstances." *State v. Glaze,* 452 N.W.2d 655, 662 (Minn. 1990). When there is no objection and the misconduct is plain, placing the burden on the prosecution to show lack of prejudice will allow for more effective appellate regulation of impermissible practices. Appellate courts should "not hesitate in a suitable case to grant relief in the form of a new trial." *Id.* For our part, we retain the authority in the appropriate case to reverse under our supervisory powers, without regard to whether the defendant was prejudiced. Therefore, we reverse and remand to the court of appeals to determine whether the prosecutor's conduct constituted plain error and to place the burden on the prosecution to show lack of prejudice.

Reversed and remanded.

ANDERSON, PAUL H., Justice (concurring).

I concur in the opinion of the majority. I write separately to address the majority's conclusion that, when we conduct a plain error review of unobjected-to prosecutorial misconduct, the state, rather than the defendant, should bear the burden of persuasion on the third prong of the plain error doctrine.

Without a doubt, the majority's holding represents a sharp and radical departure—a 180° turn—from our court's and the United States Supreme Court's jurisprudence as to the burden of persuasion on the third prong of the plain error test. *See State v. Griller,* 583 N.W.2d 736, 741 (Minn.1998) (stating that "[t]he defendant bears the burden of persuasion on this third prong"); *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (stating that, under the federal plain error rule—Rule 52(b)—"[i]t is the defendant[,] rather than the Government[,] who bears the burden of persuasion with respect to [the third prong]."). While I acknowledge that the rationale for the majority's decision to shift the burden of proof to the state on this prong has some merit, I am concerned with our court making such a sharp departure from precedent when the concept of shifting the burden of persuasion was not fully developed in the parties' briefs or orally argued before our court, and does not have well-developed case law to support it. The majority acknowledges the former point when it states that Ramey argues for a pre-*Griller* harmless-beyond-a-reasonable-doubt analysis and the state advocates that we adhere to our *Griller* plain-error analysis.

In essence, this case is about how we as an appellate court go about doing our business. I would much prefer an approach whereby, in the context of this issue in this case, we adhere to our well-established

precedent, but in the majority or by concurrence or dissent signal that we invite arguments in the future that specifically address this issue. Under such circumstances, we would have the benefit of well-developed arguments, could properly evaluate the merits of each side's argument, and could then decide this issue. It is for this reason that I believe it is imprudent for us to adopt the burden-shifting change adopted by the majority. Based upon the facts and arguments presented here, I conclude that, for now, it is best that we adhere to our well-established precedent and the guidance provided by the United States Supreme Court.

GILDEA, Justice (concurring).

I agree with the majority that plain error analysis applies when reviewing unobjected-to prosecutorial misconduct and that the third prong of the plain error test is the appropriate standard for determining prejudice. I write separately because I believe that the majority's new plain error formulation, shifting the burden to the state to show that prosecutorial misconduct did not affect the defendant's substantial rights, ignores the doctrine of stare decisis and creates unprecedented new law without compelling reason. As we have done in our prior cases, I would continue to place the burden on the defendant to show that any error that was plain affected substantial rights.

Fifty years ago we emphasized the importance of the doctrine of stare decisis to the rule of law. *See State ex rel. Foster v. Naftalin*, 246 Minn. 181, 205, 74 N.W.2d 249, 264 (1956). We said:

> Government by law instead of by man, which is the main bulwark to our democratic form of government, demands a decent respect for the rule of stare decisis in order that citizens of this state will be assured that decisions of the court

are good for more than "one trip and one day only."

*Id.; see also Zettler v. Ventura*, 649 N.W.2d 846, 852 (Minn.2002) (Anderson, R.A., J., dissenting) (quoting *Foster* and noting that "[w]hile the doctrine of stare decisis is not inflexible, it is not to be abandoned on a whim; its purpose is to provide stability in the law"). We have continued to adhere to this view and have noted that "[w]e are extremely reluctant to overrule our precedent." *State v. Lee*, 706 N.W.2d 491, 494 (Minn.2005). Because of the importance of stare decisis, "we have required a 'compelling reason'" to overrule our precedent. *Id.* (quoting *Oanes v. Allstate Ins. Co.*, 617 N.W.2d 401, 406 (Minn.2000)). The majority's decision abandons our doctrine of stare decisis, creates instability in the law, rewrites our court rule, and overrules recent cases, all without compelling reason to do so.

Under the majority's new approach, the defendant bears the burden of proof under the first two prongs of the plain error analysis, but the state would bear the burden under the third prong. This is contradictory to our court rule and our case law, which has placed the burden on the defendant to satisfy each element of the plain error analysis before an appellate court will address unpreserved error.

The result reached by the majority is at odds with Minnesota Rule of Criminal Procedure 31.02. In *United States v. Olano*, which we relied on as the basis for our plain error analysis, the U.S. Supreme Court explained that the basis for placing the burden on the defendant in the plain error analysis is the language of the rule itself. 507 U.S. 725, 734–35, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) ("This burden shifting is dictated by a subtle but important difference in language between the two parts of Rule 52: While Rule 52(a) precludes error correction only if the error

'does *not* affect substantial rights,' Rule 52(b) authorizes no remedy unless the error *does* 'affec[t] substantial rights.' ''). Our Rule 31.02 contains the identical language and indeed our rule is based on the federal rule. *See* Minn. R.Crim. P. 31 cmt.–1990 ("Rule 31.01 (Harmless Error) comes from F.R. Crim P. 52(a). Rule 31.02 (Plain Error) comes from F.R.Crim. P. 52(b)."). Because Rule 31.02 permits an appellate court to consider unpreserved error only if the error *does* affect substantial rights, it is logical to place the burden of persuasion on the defendant to show the error *did* affect substantial rights—and not on the state to prove the negative. This is the approach we have taken in our cases since the development of the plain error doctrine in Minnesota.[7]

In *State v. Griller,* our controlling plain error case, we interpreted the plain error analysis in accordance with the U.S. Supreme Court's jurisprudence:

> The United States Supreme Court has established a three-prong test for plain error, requiring that before an appellate court reviews an unobjected-to error, there must be (1) error; (2) that is plain; and (3) the error must affect substantial rights. If these three prongs are met, the appellate court then assesses whether it should address the error to ensure fairness and the integrity of the judicial proceedings.

583 N.W.2d 736, 741 (Minn.1998) (citing *Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)). Citing *Olano,* we went on to specifically address the prejudice prong of the plain error analysis:

> The third prong, requiring that the error affect substantial rights, is satisfied if the error was prejudicial and affected the outcome of the case. The defendant bears the burden of persuasion on this third prong. We consider this to be a heavy burden.

*Griller,* 583 N.W.2d at 741 (citing *Olano,* 507 U.S. at 734, 113 S.Ct. 1770).

Although *Griller* did not specifically address unobjected-to prosecutorial misconduct, we have cited *Griller* for the proposition that before an appellate court will consider a defendant's claim of unobjected-to prosecutorial misconduct, the defendant bears the burden of proof under *all prongs* of the plain error analysis—including the prejudice prong. *See State v. MacLennan,* 702 N.W.2d 219, 236 (Minn.2005) ("In order to show that the error has affected his substantial rights, *the defendant must show* that the error was prejudicial and that it affected the outcome of the case.") (emphasis added); *State v. Morton,* 701 N.W.2d 225, 234 (Minn.2005) ("Under the plain error standard, a defendant may obtain relief *upon demonstrating that:* (1) there was error, (2) that is plain, and (3) the error affected the defendant's substantial rights.") (emphasis added).

Taken together, these cases form strong precedent for the proposition that the defendant, and not the state, bears the burden to show that unobjected-to prosecutorial misconduct affected the defendant's substantial rights. The majority's new rule overturns this precedent and creates a new plain error analysis applicable only to unobjected-to prosecutorial misconduct. Under the majority's new rule, this court will address unpreserved error if it (1) is error, (2) that is plain, and (3) the state cannot show that the error did not affect

---

7. In essence, the majority's result rewrites Rule 31.02. In my view, we should not rewrite our court rules in specific cases, as the majority does here, especially when the issue was not briefed. We have a process for revision of court rules, and that process should be followed before rules are changed.

the defendant's substantial rights. The burden shift amounts to a presumption that the error affected substantial rights— leaving the state to defend itself against that presumption when it was the defendant who failed to preserve the error properly during trial. This improper shift in burden is inconsistent with our precedent on prosecutorial misconduct, and it ignores the concerns we expressed in *State v. Ray*, that defendants might deliberately pass on an objection at trial. 659 N.W.2d 736, 747 n. 4 (Minn.2003).

In departing from our established precedent, the majority cites authority from other jurisdictions. But this authority does not provide a compelling reason for us to depart from our precedent. The majority relies on cases from other jurisdictions that place the burden of proof on the state in the context of a *harmless* error analysis. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Wilson v. State*, 874 So.2d 1155, 1159 (Ala. Crim.App.2003). These cases are inapposite within the context of the *plain* error analysis.

The majority also cites a Wisconsin case, which appears to use a harmless error analysis "in determining whether to invoke the plain error doctrine," and places the burden on the state to show that the error was harmless. *State v. King*, 205 Wis.2d 81, 555 N.W.2d 189, 194 (1996) ("[W]hen constitutional errors are involved and plain error is alleged, the state has the burden to show that the error was harmless beyond a reasonable doubt."). That case explicitly recognizes that its holding is inconsistent with the relevant U.S. Supreme Court authority on the issue. *Id.* ("This conclusion is inconsistent with *Olano*, in which the Supreme Court concluded that under the plain error doctrine, 'It is the defendant rather than the Government who bears the burden of persuasion with

respect to prejudice.' "). This same authority that Wisconsin rejects is the very foundation for our formulation of the plain error doctrine in Minnesota. *See Griller*, 583 N.W.2d at 741 (citing *Olano*, 507 U.S. at 734, 113 S.Ct. 1770).

The majority arrives at its conclusion that we must overrule our precedent because it says that "placing the burden on the defendant to show prejudice has not been adequate to deter prosecutorial misconduct in the eight years since *Griller* was decided." Just how placing the burden on the prosecution will deter misconduct the majority does not say. In any event, the majority's speculative hoped-for outcome does not constitute a compelling reason to depart from precedent. *Cf. Oanes*, 617 N.W.2d at 405 (finding "contradictory line of cases" from Minnesota, which resulted in claims being lost before those claims could even be brought, to be a compelling reason for overruling prior precedent).

The majority suggests that public policy concerns regarding prosecutorial misconduct provide a compelling reason to depart from our established precedent. I agree with the majority that prosecutorial misconduct is a serious issue. Because the issue is a form of professional misconduct, I believe the problem of prosecutorial misconduct is better dealt with through the efforts of the Office of Lawyers Professional Responsibility than through a rejection of our precedent. *See, e.g.*, Minn. R. Prof. Conduct 3.8 cmt. ("Applicable law may require other measures by the prosecutor and knowing disregard of those obligations or a systematic abuse of prosecutorial discretion could constitute a violation of Rule 8.4.").

Finally, the majority claims that its new burden-shifting rule will serve policy concerns by "better allow[ing] substantive review of conduct that prosecutors should

know is clearly forbidden and [putting] the onus on the prosecution to defend against the prejudicial effect of its own misconduct." It is unclear to me why a shift in burden would better allow the substantive review of prosecutorial misconduct. This court has a strong history of providing substantive review of claims of prosecutorial misconduct, even with the burden to show prejudice placed on the defendant. In short, the policy concerns the majority identifies do not provide a compelling reason to depart from our precedent.

I would retain our original formulation for plain error in cases of unobjected-to prosecutorial misconduct.

ANDERSON, G. BARRY, Justice (concurring).

I join in the concurrence of Justice Gildea.