*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1479**

State of Minnesota,
Respondent,

vs.

Emmanuel Trokon Brown,
Appellant.

**Filed July 28, 2014
Affirmed
Connolly, Judge**

Hennepin County District Court
File No. 27-CR-13-439

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rochelle R. Winn, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Connolly, Judge; and Willis, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**UNPUBLISHED OPINION**

**CONNOLLY**, Judge

Appellant challenges his conviction of violation of a domestic-abuse no-contact order (DANCO), arguing that the prosecutor committed serious misconduct by eliciting testimony that appellant had been in and out of jail and by commenting on that testimony during closing argument. Because we see no error in the prosecutor's conduct and no prejudice to appellant, we affirm.

**FACTS**

In November 2012, a DANCO was issued prohibiting appellant Emmanuel Brown from directly or indirectly contacting D.D., his former girlfriend. On January 3, 2013, D.D.'s neighbor, who lived in the apartment next to hers, called 911 because he heard screaming and yelling, including "help me" and "stop hitting me" in D.D.'s voice, and, when he looked through the peephole in his door, he saw appellant grab D.D. and bring her back into her apartment. When the police arrived, the neighbor told them what he had seen and heard.

Appellant was arrested and charged with violation of the DANCO; the complaint was later amended to add charges of felony domestic assault and misdemeanor giving false information to the police. At trial, the prosecutor presented D.D.'s neighbor as a witness. Appellant's attorney cross-examined the neighbor about the relationship between D.D. and appellant.[1]

---

[1] Appellant is represented by different counsel on appeal.

> Q. Were you aware that [D.D.] and [appellant] were no longer in a relationship [on January 3, 2013] ?
> A. If that was true I would have been aware of it.
> Q. . . . [Y]ou don't believe that to be true?
> A. No.

On redirect examination, the prosecutor returned to the topic of appellant's relationship with D.D. on January 3, 2013.

> Q. So what was your understanding of their situation?
> A. [Appellant] got arrested like usual, got out, went back home [i.e., to D.D.'s apartment].
> Q. Had you seen [appellant] in the building prior to January 3?
> A. Yes.
> Q. And how often were you seeing him in the building prior to January 3rd?
> A. I'd say about every other day.

Appellant's attorney did not object to these questions.

In closing argument, the prosecutor told the jury, "[R]ecall what [the neighbor] said about [appellant and D.D.'s] relationship, it was not over, he'd get arrested and he'd keep coming back. This was not the first and only time [appellant] was violating that [DANCO]." Appellant's attorney objected; the district court overruled the objection. The district court offered to give a curative instruction on "evidence of other crimes," but appellant's attorney declined the offer on the ground that it would call further attention to the issue.

Following trial, the jury found appellant guilty of all three charges, and he was sentenced to 15 months in prison for the DANCO violation. He challenges his conviction, arguing that he was prejudiced by prosecutorial misconduct during examination of a witness and closing argument.

3

**D E C I S I O N**

**1.    Cross-examination**

Appellant argues that the prosecutor committed misconduct by questioning the neighbor about the relationship between appellant and D.D. and eliciting the information that appellant, despite the DANCO, was seen at D.D.'s apartment "about every other day." Because the alleged error was not objected to, the standard of review is plain error. *See State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006) (stating that defendant must demonstrate that error occurred and that error was plain, but prosecution must show lack of prejudice).

Appellant's counsel opened the door to the prosecutor's questions on redirect examination by asking the neighbor about the relationship on cross-examination. "Opening the door occurs when one party by introducing certain material . . . creates in the opponent a right to respond with material that would otherwise have been inadmissible." *State v. Bailey*, 732 N.W.2d 612, 622 (Minn. 2007) (quotation omitted); *State v. DeZeler*, 230 Minn. 39, 45, 41 N.W.2d 313, 318 (1950) ("Where one party introduces inadmissible evidence, he cannot complain if the court permits his opponent in rebuttal to introduce similar inadmissible evidence.") Therefore, there was no error, much less plain error, in the prosecutor questioning a witness about matters previously explored by appellant's attorney.

Moreover, because the jury had already heard the neighbor testify that he did not believe the relationship between appellant and D.D. was over by January 3, 2013, the information that appellant and D.D. were still seeing each other would not have been

4

prejudicial; the prosecution can meet its burden of showing lack of prejudice. *See Ramey*, 721 N.W.2d at 302.

## 2. Closing argument

Appellant's attorney objected to the alleged misconduct during closing argument. The district court overruled the objection and offered to give a curative instruction; appellant's attorney rejected the offer. The determination of whether a prosecutor committed misconduct during closing argument is within the district court's discretion. *State v. Ray*, 659 N.W.2d 736, 746 (Minn. 2003).

Appellant argues that the prosecutor's closing-argument reference to the neighbor's testimony about appellant's frequent presence at D.D.'s apartment and her comment that "This was not the first and only time [appellant] was violating that [DANCO]" were "unusually serious misconduct" that entitles appellant to a reversal of his conviction. But prosecutorial misconduct requires a violation of "clear or established standards of conduct, e.g., rules, laws, orders by a district court, or clear commands in this state's case law." *State v. McCray*, 753 N.W.2d 746, 751 (Minn. 2008) (quotation omitted). Appellant has shown no such violation. Moreover, even serious misconduct will not result in a new trial if the misconduct is harmless beyond a reasonable doubt. *See State v. Mayhorn*, 720 N.W.2d 776, 785 (Minn. 2006) (noting that the harmless-beyond-a-reasonable-doubt standard is appropriate when there has been an objection to prosecutorial misconduct).

Because the prosecutor was entitled to question the neighbor about his knowledge of appellant and D.D.'s ongoing relationship after appellant opened the door to this line

of inquiry, she was also entitled to comment on the matter in closing argument. *See State v. Wahlberg*, 296 N.W.2d 408, 419 (Minn. 1980) (noting that prosecutor has the "right to present to the jury all legitimate arguments on the evidence, to analyze and explain the evidence, and to present all proper inferences to be drawn therefrom").

Even assuming that the prosecutor's closing-argument statement was plain error, the error was harmless beyond a reasonable doubt. Before closing argument, the jury had heard that a DANCO had been issued that prohibited appellant from direct or indirect contact with D.D., that D.D.'s neighbor believed appellant and D.D. were still in a relationship, that appellant was frequently at D.D.'s apartment, and that appellant had repeatedly been charged with DANCO violations, incarcerated, and returned to D.D. Particularly when the trial is considered as a whole, appellant was not harmed by the prosecutor's statement. *See State v. Milton*, 821 N.W.2d 789, 802 (Minn. 2012) (noting that appellate courts review claims of prosecutorial misconduct to determine whether the conduct, in light of the whole trial, impaired the defendant's right to a fair trial).

Neither the prosecutor's questioning of D.D.'s neighbor nor her statement in closing argument was error, and neither resulted in prejudice to appellant.

**Affirmed.**