*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1924**

State of Minnesota,
Respondent,

vs.

Christopher Ray Maeyaert,
Appellant.

**Filed December 5, 2016
Affirmed
Reyes, Judge**

Redwood County District Court
File No. 64CR15269

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Steven S. Collins, Redwood County Attorney, Joel C. Brakkne, Assistant County Attorney, Redwood Falls, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Davi E. Axelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Jesson, Presiding Judge; Stauber, Judge; and Reyes, Judge.

UNPUBLISHED OPINION

**REYES**, Judge

Appellant argues that the state committed reversible error when the prosecutor asked him "were they lying" questions and used appellant's responses during closing argument. Because we conclude that any error did not affect appellant's substantial rights, we affirm.

## FACTS

Appellant Christopher Maeyaert and R.R. are unacquainted neighbors. On April 15, 2015, appellant's unleashed dog roamed onto R.R.'s yard while her home-daycare children played outside. R.R. attempted to remove the dog from her property using a children's aluminum bat, swinging it like a golf club. According to R.R., appellant approached R.R. and began waving his arms and swearing at her out of a belief that she was trying to hit the dog. Appellant and R.R. then began to argue.

During the argument, appellant and R.R. both engaged in yelling and swearing. Appellant was also jumping up and down. According to R.R., appellant threatened to break her wrist and to kill her six-year-old son if he was ever left outside alone. R.R. pointed the bat at appellant and told him to get off of her property.

After the altercation, R.R. called 911, and appellant called a non-emergency number. A nearby police investigator who had observed the commotion between appellant and R.R. responded to the calls. The investigator spoke with R.R. and appellant about the incident. When the investigator finished speaking with appellant, and without notifying appellant that he was under arrest, the investigator told appellant "to get up and

2

come with [him.]" Instead, appellant went back into his house, and the investigator followed him. After a short struggle inside the house, the investigator was able to handcuff appellant and took him to jail.

In an amended complaint, the state charged appellant with (1) terroristic threats in violation of Minn. Stat. § 609.713, subd. 1 (2014); (2) obstructing legal process in violation of Minn. Stat. § 609.50, subd. 1(2) (2014); (3) disorderly conduct in violation of Minn. Stat. § 609.72, subd. 1(3); and (4) an additional charge of terroristic threats in violation of Minn. Stat. § 613.713, subd. 1.

At trial, the jury found appellant guilty of (1) terroristic threats for threatening to kill R.R.'s son; (2) obstructing legal process; and (3) disorderly conduct. The jury found appellant not guilty of terroristic threats for threatening to break R.R.'s wrist. The court sentenced appellant to 32 months in prison for terroristic threats and concurrent sentences of 90 days for obstructing legal process and disorderly conduct. This appeal follows.

**D E C I S I O N**

Appellant argues that the state committed plain error that affected his substantial rights when the prosecutor asked appellant "were they lying" questions and relied on appellant's answers to those questions during closing argument. We agree that the prosecutor's error was plain but conclude that it did not affect appellant's substantial rights.

We review unobjected-to prosecutorial misconduct under a modified plain-error standard. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). To meet the standard, "there must be (1) error; (2) that is plain; and (3) the error must affect substantial rights."

3

*State v. Griller*, 583 N.W.2d 738, 740 (Minn. 1998). Appellant has the burden to prove

that an error occurred and that the error was plain. *Ramey*, 721 N.W.2d at 302. If

appellant proves plain error, then the burden shifts to the state to prove that the error does

not affect appellant's substantial rights. *Id.* If appellant meets his burden and the state

does not, then this court determines whether the error should be addressed to ensure the

fairness and integrity of judicial proceedings. *Id.*

## I.      The "were they lying" questions were made in error because appellant did not hold the state's witnesses' credibility in central focus.

Minnesota has not adopted an absolute prohibition of "were they lying" questions.

*State v. Leutschaft*, 759 N.W.2d 414, 421 (Minn. App. 2009), *review denied* (Minn. Mar.

17, 2009). In general, "were they lying" questions are improper because they do not

assist the jury in assessing a witness's credibility and can give jury members the

impression that, in order to believe the defendant's testimony, they must conclude that

the state's witnesses are lying. *State v. Pilot*, 595 N.W.2d 511, 516, 518 (Minn. 1999).

However, "were they lying" questions are not improper where the defense holds the

state's witnesses' credibility in central focus. *Id.* at 518.

Central focus occurs when the focus of the defense, either expressly or by

unmistakable insinuation, is to undermine the credibility of opposing witnesses. *See id.*;

*Leutschaft*, 759 N.W.2d at 422–23; *see also State v. Simion*, 745 N.W.2d 830, 843 (Minn.

2008); *State v. Dobbins*, 725 N.W.2d 492, 511 (Minn. 2006). Central focus does not

occur when the defendant's testimony contradicts but does not "state or insinuate" that

the state's witnesses are lying. *State v. Morton*, 701 N.W.2d 225, 234-35 (Minn. 2005);

4

*see also Dobbins*, 725 N.W.2d at 511; *State v. Caine*, 746 N.W.2d 339, 359-60 (Minn. 2008).

During trial, the state facilitated two exchanges and made one comment, all unobjected to, that appellant challenges in this appeal. The first exchange occurred during the state's cross-examination of appellant:

> Q: And you're asking us to take your word for it? You heard the testimony of [the investigator], and [R.R.], and they both give differing statement[s] as to what transpired.
>
> A: Yeah, but [the investigator] wasn't there, he didn't hear what happened, he didn't fully see what happened, he even admitted he was in the car, he didn't see what she was doing, he didn't hear what she was saying.
>
> Q: You're asking the jury to believe you?
>
> A: Yes.
>
> Q: Over [the investigator], with regards to the obstructing justice, the resisting arrest, and you're asking the jury to believe you rather than [R.R.] with regards to the incident that happened, is that correct?
>
> A: All I'm saying is what had happened and to be honest—
>
> Q: Is that "yes," or "no?"
>
> A: Yes.
>
> Q: If you've got two (2) different stories, one (1) of you has to—
>
> A: Be lying, that is true.
>
> Q: So you're asking the jury to believe you?
>
> A: Yes, and I'm—

5

The second exchange occurred in the same cross-examination:

> Q: So, nine (9) convictions for crimes of dishonesty and you want the jury to believe you?
> A: Those crimes are not anything near this.
>
> Q: I'm just asking you, you're asking the jury, this weighs on your credibility, and you're asking the jury to believe you over [R.R.], to believe you over [the investigator], despite these nine (9) convictions for crimes of dishonesty?
>
> A: Yes, because that's why—

The state argues that the prosecutor did not directly ask "were they lying" questions on cross-examination. However, the prosecutor twice asked appellant to comment on the credibility of the state's witnesses in a way that would lead jury members to think that they must either believe appellant or the state's witnesses.

During closing argument, the state made the following comment:

> Convictions of dishonesty, there were multiple, there were nine (9) that the State introduced and he sat before and he asked you to believe him. He asked you to believe him over [the investigator]. He asked you to believe him over [R.R.], *for you to believe him you have to believe that [the investigator] took the stand and lied before you*. You have to, *if you believe Chris Maeyaert, you would have to believe that [R.R.] took the stand and lied before you*. These are two (2) very differing, contrasting statements that were made about what happened in this incident. So I challenge you to look at those convictions for dishonesty, is he someone that you want to believe based on these crimes of dishonesty. His credibility is suspect.

Thus, the state expressed to the jury that, in order to believe appellant, they must conclude that the state's witnesses lied.[1]

---

[1] During closing argument, the state may tell jury members that they must decide who to believe, as long as the state's comments do not rise to the level of "were they lying"

On direct examination, neither appellant nor appellant's mother accused the state's witnesses of lying. Rather, appellant and his mother contradicted or added facts to the testimony of the state's witnesses, or indicated that the investigator was not present for the argument between appellant and R.R. The only extensive comment the defense made on the state's witnesses' credibility occurred during closing argument, after the state's questions and the state's closing argument. As a result, the state's questions on cross-examination and comment during closing argument were made in error because appellant did not hold the state's witnesses' credibility in central focus.

## II. The error was plain.

An error is plain if it is clear and obvious because it "contravenes case law, a rule, or a standard of conduct." *Ramey*, 721 N.W.2d at 302. Here, the error was plain because it is contrary to caselaw holding that "were they lying" questions are improper where the defense does not hold the opposing witnesses' credibility in central focus. *Pilot*, 595 N.W.2d at 518.

## III. The plain error did not affect appellant's substantial rights.

A plain error affects substantial rights if there is a reasonable likelihood that the error had a significant effect on the jury's verdict. *Morton*, 701 N.W.2d at 235. The state satisfies the third prong of the plain-error analysis if it demonstrates that "the jury would have reached the same verdict even if the state had not asked" the "were they lying" questions. *Id.* at 235-36; *see also Dobbins*, 725 N.W.2d at 513. Here, the state must

---

questions, because "[i]t is the job of a jury to determine the credibility of the witnesses." *Caine*, 746 N.W.2d at 360.

7

show that the prosecutorial misconduct did not affect appellant's substantial rights for the three convictions: terroristic threats, obstructing legal process, and disorderly conduct. We address each in turn.

### A. Terroristic Threats

"Whoever threatens, directly or indirectly, to commit any crime of violence with purpose to terrorize another . . . or in a reckless disregard of the risk of causing such terror" has made terroristic threats in violation of Minn. Stat. § 609.713, subd. 1. R.R. testified that appellant threatened to kill her son if he was ever playing outside alone. She further testified that her daycare children were in earshot, and her son later asked her questions about the threat. Appellant denied ever making reference to R.R.'s son. But, the state impeached appellant with his nine prior convictions for crimes of dishonesty. Thus, R.R.'s testimony and the state's strong impeachment evidence establish that the jury's verdict would have been the same even without the state's questions and comment.

### B. Obstructing legal process

Obstructing legal process occurs when an individual "obstructs, resists, or interferes with a peace officer while the officer is engaged in the performance of official duties." Minn. Stat. § 609.50, subd. 1(2). At trial, the investigator, appellant, and appellant's mother gave testimony indicating that, after the investigator told appellant "to get up and come with [him]," appellant went into his house instead of following the investigator's direction. Further, the investigator and appellant testified that a struggle between them occurred inside the house. Therefore, there is no reasonable likelihood that the state's questions and comment affected the jury's verdict on this charge.

## C. Disorderly conduct

Appellant was convicted of disorderly conduct because he "engage[d] in offensive, obscene, abusive, boisterous, or noisy conduct or in offensive, obscene, or abusive language tending reasonably to arouse alarm, anger, or resentment in others" and he knew or had reasonable grounds to know that his conduct would "alarm, anger or disturb others or provoke an assault or breach of the peace." Minn. Stat. § 609.72, subd. 1(3).

At trial, all of the witnesses, including appellant himself, gave testimony that appellant engaged in some form of jumping up and down, yelling, and swearing at R.R. during the argument. As a result, there is no reasonable likelihood that the jury would have reached a different verdict.

The state has demonstrated that the jury would have reached the same conclusion even without the state asking appellant to comment on the credibility of its witnesses and using appellant's responses during closing argument. Thus, any plain error did not affect appellant's substantial rights.

**Affirmed.**

9