*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A22-1655**

State of Minnesota,
Respondent,

vs.

Cheath Tek,
Appellant.

**Filed December 26, 2023**
**Affirmed**
**Ross, Judge**

Scott County District Court
File No. 70-CR-19-9197

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Ronald Hocevar, Scott County Attorney, Todd P. Zettler, Assistant County Attorney, Shakopee, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rebecca Ireland, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Segal, Chief Judge; and Worke, Judge.

**NONPRECEDENTIAL OPINION**

**ROSS**, Judge

This appeal arises from appellant Cheath Tek's convictions of first-degree impaired driving, second-degree assault, and fleeing from police. Tek contends that the co-prosecutors violated his right to a fair trial by repeatedly framing the law and his alleged

conduct in terms of character during their opening statement and closing argument. We hold that the prosecutors' thematic "care a little" approach to the trial in advising the jury that the law requires only that everyone must "care a little bit about other people," that Tek's conduct showed that he "didn't care" about others, and that jurors should "be the ones who care" by finding Tek guilty, constitutes prosecutorial misconduct. We also hold, however, that the misconduct did not affect Tek's substantial rights because the overwhelming evidence of his guilt and the jury's careful decision-making convinces us that the jury rendered its verdict uninfluenced by the misconduct. We therefore affirm.

## FACTS

The state charged Cheath Tek with first-degree impaired driving, second-degree assault with a dangerous weapon, fifth-degree criminal sexual conduct, fifth-degree possession of a controlled substance, and fleeing a police officer on foot. During the trial, the two prosecutors presented the case under the theme of "caring." After receiving the trial evidence that we now summarize, the jury found Tek guilty on the assault, impaired-driving, and fleeing charges, but it acquitted him on the sexual-misconduct and drug charges.

Tek was a regular at Niesen's Sports Bar & Grill in Savage and had drinks there one night in June 2019. He had a friendly relationship with one bartender in particular, and the two usually greeted each other with a hug. That night, after they hugged, Tek gave the bartender "a little tap [on her] breast." The bartender described the contact as "completely harmless" and as a "friendly encounter between the two of us," but her ex-boyfriend was also present and took exception to it. A brawl erupted involving Tek, the bartender's ex-

2

boyfriend, and the ex-boyfriend's friends. Niesen's staff forced the melee outside, where it continued in the parking lot.

A bar patron called 911. The caller reported that as the fracas ended, Tek sped off in his car but was "totally shit-faced and needs a DWI." While police were on the way, Tek immediately returned to Niesen's, leaving his keys in his car. Another bar patron witnessed the event and attempted unsuccessfully to take Tek's keys from the car to prevent him from driving again. Tek saw this and began approaching the man. The man quickly left the parking lot on foot and headed toward a different, nearby bar. He did not get far. He turned and saw that Tek was chasing him with his car. The man ran across a field, assuming Tek would end the chase. But Tek drove his car over a curb and through the grassy field in pursuit. Several times Tek's car came within a foot of hitting the fleeing man.

Savage and Burnsville police officers arrived. Officers found the man kneeling on the ground about a block from Niesen's, panting heavily. Police learned that Tek had reentered Niesen's, and they tried to surround the bar. One officer saw Tek run from the bar and down the alley. Officers chased Tek for about a block and a half. They caught him, arrested him, and placed him in a squad car. One officer drove Tek to the hospital for blood testing. After he placed Tek in his car, the officer told Tek that he faced an assault charge. Tek responded chuckling, with a slurred and mostly unintelligible boast about the "five pussies" who "tried to fight" him. During his approximately twenty-minute stay in the squad car before reaching the hospital, Tek periodically dozed off, breathed heavily, and complained that he was going to vomit. Blood testing revealed Tek's alcohol concentration to be about 0.117.

3

Police meanwhile seized and searched Tek's car. An officer found a bag containing a white powdery substance and Tek's wallet with his driver's license. The white substance tested positive as cocaine.

Tek appeals from his conviction.

**DECISION**

Tek challenges his conviction by arguing that he received an unfair trial on account of the two prosecutors' "care" theme throughout the case. Tek failed to object to any of the prosecutors' statements at trial, and we therefore apply the modified plain-error test to address his prosecutorial-misconduct challenge. *See State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). Under this test, we will consider reversing if we determine that an error occurred, that the error was plain, and that the error affected the defendant's substantial rights. *Id.* Tek first bears the burden of establishing that an error occurred and that it was plain. *Id.* If he establishes both, the burden then shifts to the state to show that the error did not affect his substantial rights. *Id.* If the state fails to meet this burden, we then assess whether the error requires reversal to "ensure fairness and the integrity of the judicial proceedings." *Id.* For the following reasons, we conclude that the prosecutors improperly framed the case around Tek's character but that the prosecutors' improper references to character did not affect Tek's substantial rights.

We easily conclude that the prosecutors committed misconduct by invoking the concept of character, constituting plain error. An error is plain if it is clear or obvious. *State v. Strommen*, 648 N.W.2d 681, 688 (Minn. 2002). We consider a prosecutor's statements in the context of the attorney's presentation as a whole. *State v. Nissalke*, 801 N.W.2d 82,

4

105 (Minn. 2011). Improper character attacks can include comments made by a prosecutor during opening statements and closing arguments. *State v. Atkins*, 543 N.W.2d 642, 649 (Minn. 1996); *see also* Minn. R. Evid. 404(a) ("Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion . . . ."). One prosecutor began the trial with a moralistic, "care" theme, informing the jury that the law itself asks only that everyone must simply care for others:

> Ladies and gentlemen, the law asks really small things. It doesn't ask that you start an orphanage. It doesn't ask that you act like Mother Teresa. It asks really that you care a little bit about other people. You have to care enough that you don't hurt other people. You let people live their lives without being totally bothered. You have to just care a little bit. Beyond that, you're free to do a lot of things. In the early morning of June 2, 2019, the Defendant, in several ways and multiple times, chose not to care, didn't care who he touched or how he touched them, didn't care whether he hurt someone. He didn't care whose lives he put at risk.

The state's "care" theme continued throughout its closing and rebuttal arguments. The other prosecutor told the jury that Tek "didn't care about anyone but himself," that Tek "didn't care that evening," that Tek "didn't care about [the bartender] when he touched her [breast] in the bar," that Tek "didn't care about anyone that he could have potentially hurt while he was driving while under the influence of alcohol," and that Tek "absolutely did not care who he hurt that night in so many ways." The prosecutor then shifted from the law's duty of care and Tek's failure to meet that duty, appealing finally to the jurors' own moral duty to care, urging, "You can be the ones who care. Find the Defendant guilty." The prosecutors made 23 references to care as a duty, as a failure by Tek, and as a trait that jurors should rely on to decide the case against Tek. These repeated references to build the

you-just-gotta-care theme seem clearly designed to play on the jury's moral sentiments about Tek's character (and the jury's character). By drifting so clearly and so far from the proper focus on whether Tek's conduct met the elements of the charged offenses, the prosecutors' statements were plain error.

That the prosecutors engaged in misconduct does not end the analysis, however, because we must also determine whether the state has countered by establishing that the misconduct did not affect Tek's substantial rights. We consider various factors when making this determination, including the strength of evidence supporting the convictions, the frequency of the misconduct, and whether the jury acquitted the defendant of any charges. *See, e.g.*, *State v. Johnson*, 915 N.W.2d 740, 745 (Minn. 2018) (strength); *State v. Young*, 710 N.W.2d 272, 280 (Minn. 2006) (frequency); *State v. Glaze*, 452 N.W.2d 655, 662 (Minn. 1990) (acquittals). We have already observed that the misconduct was consistent and pervasive. We turn then to the weight of the evidence of Tek's guilt and the inferences available from the jury's two acquittals.

Even though the prosecutors' statements constitute misconduct, we will not reverse a jury's verdict here if strong evidence establishes Tek's guilt. *See State v. Washington*, 521 N.W.2d 35, 40 (Minn. 1994). The record contains both video evidence and eyewitness testimony to support each of Tek's convictions. Uncontroverted, overwhelming evidence supports the impaired-driving conviction. Multiple witnesses saw Tek enter his car after the bar fight, drive his car, exit his car, reenter his car, and drive it again. The squad-car video would convince any juror that Tek was obviously drunk, and chemical testing of his blood drawn after his arrest revealed an alcohol concentration substantially higher than the

6

*per se* limit of intoxication. *See* Minn. Stat. § 169A.20, subd. 1(5) (2018) (criminalizing the act of operating a motor vehicle with an alcohol concentration of 0.08 or more). Uncontroverted evidence likewise supports the assault conviction. The victim testified to his having fled from Tek over a curb and through a field as Tek tried to run him down with his car. *See* Minn. Stat. § 609.222, subd. 1 (2018) (criminalizing the act of assaulting another person with a dangerous weapon). And uncontroverted evidence supports Tek's conviction for fleeing officers, based on officer testimony that police chased Tek on foot through an alley, across a street, and behind a building. *See* Minn. Stat. § 609.487, subd. 6 (2018) (criminalizing the act of fleeing a police officer by means other than a motor vehicle). The overwhelming and mostly unchallenged nature of the evidence of Tek's guilt weighs heavily against the theory that the prosecutors' misconduct prejudiced his defense.

The jury's acquittals also weigh against reversing. We are disinclined to conclude that an error prejudiced a defendant when the jury demonstrates that it carefully considered the evidence despite prosecutorial misconduct. *See Glaze*, 452 N.W.2d at 662; *State v. DeWald*, 463 N.W.2d 741, 745 (Minn. 1990). The state presented testimony confirming that Tek touched the bartender's breast and evidence that Tek possessed cocaine in his vehicle. The jury nevertheless acquitted Tek of fifth-degree drug possession and fifth-degree criminal sexual conduct. These acquittals in the face of what appears to be sound evidence of guilt demonstrate that the jury was not unduly influenced by the prosecutors' focus on Tek's bad character or the jury's good character.

Tek argues that we should not take the jury's acquittals into consideration because the supreme court's opinions in both *DeWald* and *Glaze* predate *Ramey* and because

language from the *State v. Montermini* opinion prohibits us from doing so. The argument fails. No appellate decision suggests that we should no longer factor acquittals into whether prosecutorial misconduct prejudiced a defendant after *Ramey*. And Tek's reliance on *Montermini* only confirms our analysis. In that case we observed that acquittals "shed no light on which circumstances the jury believed or disbelieved . . . [and] only demonstrate that the jury believed the state failed to establish the elements of [the acquitted charges]." *State v. Montermini*, 819 N.W.2d 447, 461 (Minn. App. 2012), *rev. denied* (Minn. Nov. 20, 2012). If the jury was improperly influenced by the improper remarks about character, the jury would likely have returned guilty verdicts across the board rather than carefully evaluating the evidence and acquitting Tek. The acquittals strongly suggest that the jury properly performed its duties uninfluenced by the prosecutorial misconduct. We continue to consider acquittals when determining whether prosecutorial misconduct affected the defendant's substantial rights. Because overwhelming evidence supports the guilty verdict and the jury demonstrated its careful consideration of the evidence in relation to the charges by acquitting Tek of two of the charged offenses, we hold that the state met its burden of showing that Tek's substantial rights were not affected by the prosecutors' improper statements.

We add that, even if we concluded that the prosecutorial misconduct prejudiced Tek's right to a fair trial, we would reverse only if the plain error also requires reversal to "ensure fairness and the integrity of the judicial proceedings." *Ramey*, 721 N.W.2d at 302.

8

Tek does not provide any reason for us to conclude that reversal would be necessary to maintain public trust in the fairness and integrity of judicial proceedings.

**Affirmed.**