*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2368**

State of Minnesota,
Respondent,

vs.

Donald James Helps,
Appellant.

**Filed January 20, 2015
Affirmed
Reilly, Judge**

Otter Tail County District Court
File No. 56-CR-12-1370

Lori Swanson, Attorney General, Matthew Frank, Assistant Attorney General, St. Paul, Minnesota; and

David J. Hauser, Otter Tail County Attorney, Fergus Falls, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Chutich, Presiding Judge; Stauber, Judge; and Reilly, Judge.

U N P U B L I S H E D   O P I N I O N

**REILLY**, Judge

Appellant challenges his convictions of second-degree controlled-substance crime and second-degree conspiracy to commit controlled-substance crime, arguing that (1) the

district court committed plain error by admitting testimony of his co-conspirator's subsequent plea agreements or convictions and admitting testimony that one of the witnesses may have been in possession of stolen baseball cards, (2) the prosecutor committed misconduct by personally vouching for the credibility of its witness during closing argument, and (3) that the cumulative effect of these errors deprived appellant of a fair trial. Because appellant cannot demonstrate that his rights were substantially affected, we affirm.

**FACTS**

From January 2012 to April 2012, confidential-informant M.R.M. assisted the West Central Drug Task Force by making controlled-drug buys in Otter Tail and Clay Counties. On three separate occasions, M.R.M. arranged to purchase methamphetamine from appellant Donald James Helps.

The first incident occurred on January 31, 2012. M.R.M. contacted appellant through appellant's girlfriend, Erin Kelly, seeking to purchase two grams of methamphetamine. The task force agreed to set up a controlled buy between M.R.M. and appellant and provided M.R.M. with $400 in cash and a digital transmitting recording device. M.R.M. met with appellant and Kelly in Kelly's apartment in Fergus Falls. Two other unidentified men joined them approximately half an hour to 45 minutes later. M.R.M. gave the money to appellant, and appellant took the money and handed it to the other two men. The two men handed appellant two bags containing a white, rock-like substance totaling two grams of methamphetamine, and appellant handed the bags to M.R.M. Following the exchange, M.R.M. left Kelly's apartment and met with the task

2

force agents for a post-buy meeting. M.R.M. identified appellant's picture as the individual from whom M.R.M. purchased the drugs. The agents retrieved the recording device and sent the white rock-like substance to a laboratory for testing. It was later confirmed to be methamphetamine.

The second controlled buy took place on February 6, 2012. M.R.M. met with the task force agents before the buy and collected the digital recorder and the money. M.R.M. entered the apartment building's secured lobby area and attempted to buzz Kelly's apartment on the intercom system. M.R.M. did not receive a response from Kelly's apartment. Shortly thereafter, another man later identified as Bobby Seigler approached the building and rang the buzzer for the same apartment. Seigler was also unable to reach Kelly. M.R.M. knew that appellant was waiting for another individual to come to the apartment with the methamphetamine and suspected that Seigler was that person and would be able to sell him the drugs. M.R.M. asked Seigler if he was there to see appellant, and Seigler indicated that he was. M.R.M. purchased the drugs directly from Seigler in Kelly's apartment lobby. M.R.M. handed Seigler the agreed upon amount of cash and received one gram of methamphetamine, the exact amount of the drug that M.R.M. had arranged to purchase from appellant. M.R.M. met with the task force agents for a post-buy meeting. The agents retrieved the drugs and the audio recording. The substance was later confirmed to be methamphetamine.

The third controlled buy occurred on March 19, 2012. M.R.M. went to Kelly's apartment to meet with appellant, appellant's brother Harry Helps, and Kelly. Harry Helps was seated at a table in the back of the apartment, cutting up the

3

methamphetamine. M.R.M. handed the money to appellant, and appellant took the methamphetamine from Harry and handed it to M.R.M. M.R.M. left the apartment and met with the task force agents for a post-buy meeting, at which he returned the drugs and the digital recorder. The BCA later confirmed that the drugs consisted of 1.5 grams of methamphetamine.

The state charged appellant with one count of controlled-substance crime in the second degree in violation of Minn. Stat. §§ 152.022, subd. 1(1), 152.022, subd. 3(a) (2010), and one count of conspiracy to commit controlled-substance crime in the second degree in violation of Minn. Stat. §§ 152.022, subd. 1(1), 152.022, subd. 3(a), and 152.096, subd. 1 (2010). On January 17, 2013, appellant appeared for a plea hearing and entered an *Alford* plea to a second-degree controlled-substance crime in violation of Minn. Stat. § 152.022, subds. 1(1), 3(a).[1] Appellant later moved to withdraw his guilty plea on the ground that he was deprived of due process; the district court granted this request. A jury trial was held on July 30, 31, and August 1, 2013. The jury found appellant guilty of both charges and the district court imposed a 111-month sentence. This appeal followed.

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 167 (1970) ("An individual accused of a crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime."); *State v. Goulette*, 258 N.W.2d 758, 761 (Minn. 1977).

4

**D E C I S I O N**

**I.**

Kelly, Seigler, and Harry Helps testified at trial that they entered into plea agreements or were convicted of crimes arising out of the methamphetamine sales at issue in this case. Appellant did not object to the admission of this evidence during trial and we review for plain error. *State v. Hill*, 801 N.W.2d 646, 654 (Minn. 2011). Under the plain-error test elucidated by the Minnesota Supreme Court, the appellant must show (1) that there was an error, (2) that the error was plain, and (3) that the error affected the "substantial rights" of the defendant. *State v. Milton*, 821 N.W.2d 789, 805 (Minn. 2012). Appellant bears the burden of establishing each of these three prongs. *State v. Griller*, 583 N.W.2d 736, 741 (Minn. 1998). If all three prongs are satisfied, a reviewing court may decide whether to address the error to ensure the "fairness and the integrity of the judicial proceedings." *Milton*, 821 N.W.2d. at 805.

Addressing the first prong, appellant correctly notes that "generally evidence of a plea of guilty, conviction or acquittal of an accomplice of the accused is not admissible to prove the guilt or lack of guilt of the accused." *State v. Cermak*, 365 N.W.2d 243, 247 (Minn. 1985). However, admission of an accomplice's plea agreement or conviction may be admissible "for the value of the first-hand narrative" of what occurred, rather than to prove the accomplice's guilt. *State v. Caine*, 746 N.W.2d 339, 351 (Minn. 2008) (quoting *State v. Dukes*, 544 N.W.2d 13, 18 (Minn. 1996), *abrogated in part on other grounds*, *State v. Dahlin*, 695 N.W.2d 588, 595-96 (Minn. 2005)). And a witness's credibility may be impeached by the introduction of a prior felony conviction within ten

5

years when the district court determines that the probative value of admitting such evidence outweighs its prejudicial effect. Minn. R. Evid. 609(a)-(b).

Appellant argues that the district court erred by admitting evidence of the witness's convictions and plea agreements because it suggested to the jury that appellant was also guilty of a controlled-substance crime. But the record reflects that the district court admitted this evidence as impeachment evidence, and not to substantively prove appellant's guilt. At the time of trial, Seigler had felony convictions for second-degree assault and theft, in addition to the instant 2012 felony controlled-substance crime. The district court ruled that Seigler's prior convictions "qualif[ied] for impeachment under the language of 609, being a felony within ten years." The district court specifically stated that it performed a "whole-person analysis" in reaching this determination. The district court likewise ruled that Harry Helps's felony convictions for theft, attempted aggravated assault, and controlled-substance crimes, including the 2012 controlled-substance crime, occurred within the last ten years and were admissible because they "show[ed] the jury the whole person." Finally, the district court ruled that the probative value of Seigler and Harry Helps's prior felony convictions outweighed any prejudicial effect. *See* Minn. R. Evid. 609(a).

In *State v. Zornes*, the supreme court recognized that a felony conviction is probative of a witness's credibility "because it allows the fact-finder to see the whole person and his 'general lack of respect for the law.'" 831 N.W.2d 609, 627 (Minn. 2013), *cert. denied*, 134 S. Ct. 700 (2013) (quoting *Hill*, 801 N.W.2d at 652 (stating "the general lack of respect for the law," rather than the nature of the conviction itself, informs the

6

fact-finder about a witness's credibility)). We consider the five factors outlined in *State v. Jones* in analyzing the admissibility of a prior conviction:

> (1) the impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the similarity of the past crime with the charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach), (4) the importance of defendant's testimony, and (5) the centrality of the credibility issue.

271 N.W.2d 534, 537-38 (Minn. 1978).

The record reflects that the district court carefully considered each of the *Jones* factors in its analysis of the admissibility of Seigler and Harry Helps's felony convictions. The district court addressed each offense separately. For both Seigler and Helps, the district court found that the prior felony convictions occurred within the last ten years, that the probative value outweighed the prejudicial effect, that the similarity of the past crimes with the charged crimes was not a significant factor, that the credibility of the witnesses was important to the jury's resolution of the factual issues, and that credibility was central to the case. The district court determined that the probative value of the prior convictions outweighed the prejudicial effect, and admitted the impeachment evidence to assist the jury in gaining a view of the "whole person" of Seigler and Harry Helps. Based on this record, we determine that the district court did not err by admitting this testimony for impeachment purposes. We further determine that the district court did not err by admitting evidence of Kelly's guilty plea and plea bargain and her previous felony conviction for terroristic threats. The district court instructed the jury that the

7

evidence was admitted only insofar as it assisted the jury in deciding whether Kelly was telling the truth.

Because the district court did not err in admitting impeachment evidence under rule 609, we need not reach the issue of whether the error was "plain" or affected appellant's "substantial rights." But even if we were to reach this argument, we conclude appellant cannot show that the district court's actions prejudiced appellant or "affected the outcome of the case," *State v. MacLennan*, 702 N.W.2d 219, 236 (Minn. 2005), as a review of the record demonstrates that Seigler, Harry Helps, and Kelly did not incriminate appellant with their testimony. The evidence does not support appellant's argument that his substantial rights were abridged.

**II.**

The second question presented on appeal is whether the district court plainly erred by admitting evidence that appellant and Kelly were in possession of allegedly stolen baseball cards, affecting his substantial rights. The state did not seek to admit evidence of stolen baseball cards, nor did the state question Kelly about these cards. The state called Kelly as a witness and questioned her during direct examination about the drug transactions in her apartment. On cross-examination, appellant's attorney asked Kelly if she had "any independent recollection of another incident when [M.R.M.] came to your apartment in the winter of 2012 and you were going through a whole bunch of baseball cards," and Kelly acknowledged that she did. The state did not develop this testimony on redirect except to confirm that Kelly "recalled" an incident involving baseball cards.

8

On appeal, appellant claims that this testimony violates evidentiary rule 404(b), which generally excludes evidence of a defendant's prior bad acts, commonly known as *Spreigl* evidence, requiring plain-error review by this court. *See* Minn. R. Evid. 404(b); *State v. Spreigl*, 272 Minn. 488, 491, 139 N.W.2d 167, 169 (1965). We disagree.

In *State v. Bailey*, our supreme court stated that "[o]pening the door occurs when one party by introducing certain material creates in the opponent a right to respond with material that would otherwise have been inadmissible." 732 N.W.2d 612, 622 (Minn. 2007). It is undisputed that appellant's attorney—rather than the prosecutor—elicited testimony from Kelly regarding the allegedly stolen baseball cards. Once appellant's counsel introduced this evidence, the state had the right to question Kelly about the cards on redirect. The district court did not err by allowing this testimony.

Further, even if there was an error, appellant's substantial rights were not affected by this testimony. Appellant argues that references to the baseball cards "permeated" the entire trial and "undoubtedly left the jury with the impression that [appellant] was involved in a criminal enterprise with [Kelly] selling stolen baseball cards." Kelly denied that the baseball cards were stolen and asserted that she purchased them at a garage sale. Even assuming the cards were stolen, nothing in Kelly's testimony suggests that appellant was involved in acquiring or later selling the cards. Appellant has not demonstrated that the testimony regarding the baseball cards "affected the outcome of the case" or had a "significant effect" on the jury's verdict. *MacLennan*, 702 N.W.2d at 236.

9

Appellant's third argument is that the prosecutor committed misconduct by vouching for the testimony of its witness, M.R.M., during closing argument. We apply a modified plain-error test to allegations of prosecutorial misconduct not objected to during trial. *State v. Carridine*, 812 N.W.2d 130, 146 (Minn. 2012) (citing *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006)). "Under this test, [appellant] must establish both that the misconduct constitutes error and that the error was plain." *Id*. The burden then shifts to the state to demonstrate that the error did not affect appellant's substantial rights. *Id*. We utilize a harmless-error test. *Id*.

We consider first whether an error occurred. "A prosecutor may not personally endorse the credibility of a witness or impliedly guarantee a witness's truthfulness." *State v. Jackson*, 714 N.W.2d 681, 696 (Minn. 2006). However, the state may argue that a particular witness is or is not credible. *State v. Fields*, 730 N.W.2d 777, 785 (Minn. 2007). When determining whether prosecutorial misconduct occurred during a closing argument, "we consider the closing argument as a whole rather than focus on particular phrases or remarks that may be taken out of context or given undue prominence." *Jackson*, 714 N.W.2d at 694. The propriety of a prosecutor's closing argument lies within the sound discretion of the district court. *State v. Ray*, 659 N.W.2d 736, 746 (Minn. 2003).

The prosecutor made the following argument during his closing statement:

> You come into -- you have to assess the believability of [M.R.M.]. Now, he's approached by the Task Force. Is it -- he and his attorney, excuse me, approach the Task Force.

> There's no direct promises made, no specific targets. He provides the information. Only his full cooperation is needed. He gets the deal -- the agreement regardless of whether there's a conviction, regardless of what you find, and there's no bad feelings. There probably is at this point. He's truthful in court, and he came up here and testified. And obviously, as the judge indicated, you get to decide credibility. But he looked at you and testified. The State asserts it was completely credible. He has no reason to fabricate anything, no motive to lie. He -- in fact, it's the other way. If he does anything improper, if he does anything – he gets caught lying, he does anything wrong, he loses everything.

Appellant objects to the state's assertion that M.R.M. was "truthful in court" during his testimony. Appellant argues that this statement amounts to prosecutorial misconduct because it serves as a direct endorsement of M.R.M.'s credibility. We agree, and find that appellant satisfied the burden of establishing that an error occurred.

Next, we ask whether the prosecutor's error was "plain." A plain error is one which "violates clear or established standards of conduct," including "rules, laws, orders by a district court, or clear commands in this state's case law." *State v. McCray*, 753 N.W.2d 746, 751 (Minn. 2008). In light of well-established caselaw that a prosecutor may not personally endorse the credibility of a witness, *State v. Swanson*, 707 N.W.2d 645, 656 (Minn. 2006), we determine that the prosecutor's error was plain.

If an appellant establishes plain error, the burden shifts to the prosecution to demonstrate that the error did not prejudice the appellant's substantial rights. *State v. Leutschaft*, 759 N.W.2d 414, 418 (Minn. App. 2009). We will consider the strength of the evidence against the appellant, the pervasiveness of the misconduct, and whether the appellant had an opportunity or made efforts to rebut the improper conduct. *State v.*

11

*Davis*, 735 N.W.2d 674, 682 (Minn. 2007). "If the state fails to demonstrate that substantial rights were not affected, 'the appellate court then assesses whether it should address the error to ensure fairness and the integrity of the judicial proceedings.'" *Id.* (quoting *Griller*, 583 N.W.2d at 740).

In analyzing this prong of the plain-error test, we examine the strength of the total evidence against appellant. *State v. Washington*, 521 N.W.2d 35, 40 (Minn. 1994). Appellant argues that this case revolved, in large part, around the credibility of the witnesses, namely, M.R.M. Appellant argues that the prosecutor's statement regarding M.R.M.'s truthfulness may have affected the jury's view of his credibility. We do not find this argument persuasive given the strength of the evidence presented in the state's case against appellant. *Id.* at 40-41. This case was not one based solely on M.R.M.'s observations. In addition to M.R.M.'s testimony, the state presented testimony from Kelly, Seigler, and Harry Helps, as well as digital recordings capturing the drug sales. The state has satisfied its burden of demonstrating that the prosecutor's comments did not affect appellant's substantial rights in light of the strength of the other evidence submitted to the jury. We find that appellant cannot show that the prosecutor's error during the closing statement affected appellant's substantial rights.

**IV.**

Lastly, appellant argues that he is entitled to a new trial because the cumulative effect of the misconduct deprived him of his right to a fair trial. Even if errors individually do not entitle a defendant to a new trial, in certain cases the cumulative effect of errors may warrant reversal. *State v. Valentine*, 787 N.W.2d 630, 642 (Minn.

12

App. 2010). The test is "whether the effect of the errors considered together denied appellant a fair trial." *Id*. Upon review, we find that the comment made during the prosecutor's closing statement amounted to only a small portion of the closing argument and did not affect appellant's substantial rights. This minimal error does not entitle appellant to a new trial.

**Affirmed.**