*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1330**

State of Minnesota,
Respondent,

vs.

Rochelle Denise Wilson,
Appellant.

**Filed July 5, 2016
Affirmed
Smith, Tracy M., Judge**

Hennepin County District Court
File No. 27-CR-14-28844

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Lee W. Barry, Assistant County
Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Michael W. Kunkel, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reilly, Presiding Judge; Worke, Judge; and Smith,
Tracy M., Judge.

**U N P U B L I S H E D   O P I N I O N**

**SMITH, TRACY M.**, Judge

Appellant Rochelle Denise Wilson challenges her conviction for felony theft of

leased or rented personal property, arguing that the evidence is insufficient to prove intent

and that the prosecutor committed misconduct in his closing statements. Because the evidence is sufficient to prove that Wilson intended to deprive the owner of possession of its vehicle and because the prosecutor's challenged comments were neither plainly erroneous nor prejudicial, we affirm.

**FACTS**

On January 22, 2014, Wilson rented a 2013 Chevrolet Impala from Dollar Rent-A-Car at the Minneapolis-St. Paul airport. The rental agreement stated that the rental expired on January 29 at 4:00 p.m. The rental agreement also stated: "A return change fee of $25 will apply if you return prior to 1/28/2014 4:00:00 p.m. If you return at/or after 1/30/2014 4:00:00 p.m., a return change fee of $15.99 per day will apply ($79.95 max.), in addition to any other rental charges." Wilson did not return the rental car on January 29. At some point that is not revealed in the record, Wilson exchanged the Chevrolet Impala with Dollar for a 2013 Nissan Altima.

On March 17, 2014, Dollar demanded return of the vehicle in a letter sent to the address Wilson provided in the rental agreement. The demand letter noted that Dollar had been unable to contact Wilson and that "[f]ailure to respond to this letter will result in criminal charges being filed against you." Dollar's former operations manager, A.V., testified that Dollar's corporate office made two notes in Wilson's rental file, one indicating not to extend the rental or authorize the credit card for further charges because the rental car was more than 14 days overdue, and one noting that a demand letter was sent on March 17. A.V. also testified that he believed demand letters were always sent

2

by certified mail. Wilson testified that she did not receive Dollar's demand letter and that she was never asked to sign for a piece of certified mail.

On April 22, after checking airport parking lots, other rental companies' lots, and impound lots, A.V. reported the Nissan Altima stolen in a report to the Airport Police Department. Two days later, Dollar charged Wilson's credit card over $3,000 for the rental. On April 30, Wilson arranged for a towing company to tow the rental car to the airport because she had lost the keys. Wilson testified that she did not realize Dollar wanted its rental car back until it charged her credit card. Wilson later told an airport police officer that she had extended her rental contract with Dollar and that she did not intend to "rip off" Dollar. But she never provided promised documentation of her claimed rental extension.

The state charged Wilson with felony theft of leased or rented personal property in violation of Minn. Stat. § 609.52, subd. 2(a)(9)(iii) (2012). Before trial, the state provided notice of its intent to introduce evidence related to Wilson's prior conviction for theft of a motor vehicle in 2009. The state moved to introduce this *Spriegl* evidence, and the district court granted the motion.

The *Spriegl* evidence was as follows. In 2007, Wilson rented a car from National Rent-A-Car at the Minneapolis-St. Paul airport and failed to return the car upon expiration of the rental contract. Wilson attempted to obtain a rental extension, but National would not extend the rental because Wilson's credit card had been declined. National then sent Wilson a demand letter, and eventually reported the vehicle as stolen. When a police officer stopped the vehicle after a license-plate check showed that the

3

vehicle was stolen, Wilson indicated that she had extended the rental and that she believed she had National's permission to possess the vehicle. Wilson pleaded guilty to felony theft of a motor vehicle.

A jury found Wilson guilty of the 2014 charge. Wilson appeals.

**D E C I S I O N**

**I.**

Wilson challenges the sufficiency of the evidence for her conviction of theft of leased or rented personal property. When analyzing the sufficiency of the evidence, "we review the evidence to determine whether the facts in the record and the legitimate inferences drawn from them would permit the jury to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted." *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010) (quotation omitted).

Wilson specifically argues that the evidence was insufficient to show that she acted with intent. A person is guilty of theft when she "leases or rents personal property under a written instrument" and "does not return the property to the lessor at the end of the lease or rental term, plus agreed-upon extensions, with intent to wrongfully deprive the lessor of possession of the property." Minn. Stat. § 609.52, subd. 2(a)(9)(iii). Intent is generally proved using circumstantial evidence. *State v. Cooper*, 561 N.W.2d 175, 179 (Minn. 1997). "A conviction based on circumstantial evidence . . . warrants heightened scrutiny." *Al-Naseer*, 788 N.W.2d at 473.

4

The sufficiency of circumstantial evidence requires a two-step analysis.[1] *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). First, we "identify the circumstances proved." *Id.* Second, we "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* at 599 (quotations omitted). "Circumstantial evidence must form a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *Al-Naseer*, 788 N.W.2d at 473 (quotation omitted).

"In identifying the circumstances proved, we defer to the jury's acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved by the [s]tate." *Silvernail*, 831 N.W.2d at 598-99 (quotations omitted). Because the jury is in the best position to analyze credibility, "we consider only those circumstances that are consistent with the verdict." *Id.* at 599.

The circumstances proved are as follows. Wilson rented a Chevrolet Impala from Dollar on January 22, 2014 with a return date of January 29. The rental agreement stated: "A return change fee of $25 will apply if you return prior to 1/28/2014 4:00:00 p.m. If you return at/or after 1/30/2014 4:00:00 p.m., a return change fee of $15.99 per day will apply ($79.95 max.), in addition to any other rental charges." At some point, Wilson exchanged the Chevrolet Impala for a Nissan Altima. Someone from Dollar's corporate office entered two notes in Wilson's rental file, one indicating not to extend the rental or

---

[1] Although the state asserts that the two-step analysis for circumstantial evidence is "unnecessarily complicated," both parties agree that the two-step analysis applies here.

authorize the credit card for further charges because the rental car was more than 14 days overdue, and one noting that a demand letter was sent on March 17. Dollar sent the March 17, 2014 demand letter to the address Wilson provided in the rental agreement. The demand letter noted that the rental agreement had not been extended and that Dollar's attempts to contact Wilson had failed. On April 22, Dollar reported the Nissan Altima stolen, and, on April 24, charged Wilson's credit card over $3,000. On April 30, Wilson had the rental car towed to the airport. Wilson told airport police that she had obtained an extension of the rental agreement but provided no documentation to support this assertion. Finally, *Spriegl* evidence showed that Wilson had a prior conviction for theft of a motor vehicle after she failed to return a car rented from National and had no documentation of a claimed extension.

With respect to one of these circumstances, the parties dispute whether Dollar's demand letter was sent by certified mail. Under Minn. Stat. § 609.52, subd. 2(9) (2012), a renter's failure to return a vehicle within five days after a demand letter is sent by certified mail provides evidence of the necessary intent. But the jury was not instructed that failure to return the rental car within five days after receiving a certified letter is evidence of intent. *See* 10 *Minnesota Practice*, CRIMJIG 16.16 (2006). Whether the letter was sent by certified mail was therefore irrelevant to the jury's verdict, and remains irrelevant on appeal.

Wilson agrees that the circumstances proved are not inconsistent with her guilt, but argues that they cannot "exclude the reasonable possibility that [she] did not have the specific intent required by the statute." *See Silvernail*, 831 N.W.2d at 599 ("Under th[e]

6

second step, we must determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt, not simply whether the inferences that point to guilt are reasonable." (quotations omitted)). Specifically, Wilson argues that the circumstances proved are consistent with the rational hypothesis that Wilson intended to extend the rental agreement and pay for possession of the vehicle. At this step, we do not defer to the jury's "choice between reasonable inferences." *Al-Naseer*, 788 N.W.2d at 474 (quotation omitted).

We conclude that Wilson's asserted explanation is not rational. *See Silvernail*, 831 N.W.2d at 599. Wilson's rental agreement clearly states that the rental expired on January 29 at 4:00 p.m., in accordance with the return date she selected. Although the rental agreement imposes a $15.99 per-day rental change fee if the rental car is not returned on time, suggesting that the rental car could be kept past its return date, it imposes a maximum return change fee and makes no mention of allowing Wilson to extend the rental indefinitely. There is no evidence that Wilson sought an extension, and none was granted. The plain language of the rental agreement contradicts Wilson's assertion that the agreement authorized an indefinite rental.

Moreover, given Wilson's prior conviction for theft of a motor vehicle after she failed to timely return a rental car and no extension was granted, it was particularly irrational for her to keep Dollar's rental car without seeking a rental extension. Wilson attempts to distinguish the facts of her prior theft conviction, arguing that in that incident her permission to use the rental car had been revoked when her credit card was declined but that her credit card was never declined in the 2014 incident. Even without having her

7

credit card declined, the circumstances proved negate a conclusion that Wilson's asserted hypothesis is rational. As the state argues, Wilson "cannot credibly claim that she believed she was permitted to keep the car beyond the lease term," especially given the similar circumstances of her prior theft conviction.

We conclude that the circumstances proved are consistent with Wilson's guilt and "inconsistent with any rational hypothesis except that of guilt." *See id.* at 474-75 (quotations omitted). The evidence is therefore sufficient to support Wilson's conviction for theft of leased or rented personal property.

## II.

Wilson argues that the prosecutor committed misconduct in his closing arguments by (1) misrepresenting that the demand letter was sent by certified mail; (2) misrepresenting Wilson's prior theft conviction by omitting discussion of the intent element; and (3) shifting the burden of proof to Wilson. Wilson did not object to the prosecutor's closing arguments at trial.

When prosecutorial misconduct is not objected to at trial, we apply a modified plain error test. *State v. Wren*, 738 N.W.2d 378, 389 (Minn. 2007). Under this test, the defendant must show that an error occurred and that it was plain. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). To be plain, an error generally "contravenes case law, a rule, or a standard of conduct" and must be clear or obvious. *Id.* If the defendant demonstrates a plain error, the burden shifts to the state to show that the plain error did not affect the defendant's substantial rights. *Id.* The state must show "that there is no reasonable likelihood that the absence of the misconduct in question would have had a

8

significant effect on the verdict of the jury." *Id.* (quotations omitted). If the reviewing court determines that a plain error affected the defendant's substantial rights, it "then assesses whether the error should be addressed to ensure fairness and the integrity of the judicial proceedings." *Id.*

## A. Demand Letter

Wilson first challenges the prosecutor's description of Dollar's demand letter as a "certified demand letter." Wilson argues that the prosecutor's description misstated the evidence because the evidence did not conclusively show that the demand letter was sent by certified mail. "A prosecutor commits misconduct by intentionally misstating evidence." *State v. Mayhorn*, 720 N.W.2d 776, 788 (Minn. 2006). But a prosecutor's closing argument can include "reasonable inferences" from the evidence presented at trial. *State v. Young*, 710 N.W.2d 272, 281 (Minn. 2006).

Although the evidence presented at trial was not conclusive regarding the use of certified mail, we conclude that the prosecutor's use of "certified demand letter" was a reasonable inference from the record. *See id.* A.V. testified that he believed Dollar's corporate office always sent demand letters by certified mail. The demand letter introduced at trial was accompanied by FedEx shipment-tracking information showing that the letter was mailed by FedEx Priority Overnight shipping and delivered to Wilson's given address. FedEx Priority Overnight shipping appears to be functionally equivalent to United States Postal Service certified mail. We conclude that Wilson has not shown a plain error regarding the prosecutor's references to a "certified demand

9

letter." *See Ramey*, 721 N.W.2d at 302 (explaining that "[a]n error is plain if it was clear or obvious" (quotation and quotation marks omitted)).

Even if Wilson had shown a plain error, the statements did not affect the jury's verdict. *See id.* The jury was not instructed regarding the statutory presumption that failure to return the rental car within five days after receiving a certified demand letter provides evidence of intent. *See* Minn. Stat. § 609.52, subd. 2(9). It therefore had no reason to convict Wilson based on her receipt of a certified letter alone. Moreover, the district court instructed the jury that the attorneys' arguments were not evidence and that the jury should rely on its own memory of the evidence if the attorneys made statements that contradicted the evidence presented at trial. Because we presume that the jury followed the district court's instructions, *State v. Taylor*, 650 N.W.2d 190, 207 (Minn. 2002), the prosecutor's references to a "certified demand letter" did not have a significant effect on the jury's verdict, *see Ramey*, 721 N.W.2d at 302.

**B. Prior Theft Conviction**

Wilson also challenges the following descriptions by the prosecutor of her prior theft conviction:

(1)     Wilson "ultimately . . . entered a plea of guilty to a charge of motor vehicle theft for being in possession of [National's] car without consent after the rental term expired";

(2)     Wilson "ultimately . . . entered a plea of guilty and acknowledged that she didn't have extensions, [and] that [she] didn't have consent to have that car";

(3)    "She's been in this situation before.  She's rented a car, kept it beyond the due date, not responded to contacts and attempts to locate her or the car, and ultimately she pleaded guilty to a crime for that.  She knows it's wrong to keep a car without excuse beyond the rental period"; and

(4)    "We're asking you to consider [the prior theft conviction] because she's previously been convicted of a crime for keeping a rental vehicle beyond the due date and not having consent to have the vehicle, she knows she can't do that now, [and] she wasn't making a mistake here in 2014."

Wilson argues that in these challenged statements the prosecutor "described [Wilson's past] criminal conduct only in terms of the unauthorized use of the vehicle, neglecting the [intent] element at the heart of the offense."  But the prosecutor provided a longer description of the prior offense, and we discern no neglect of the intent element.  Contrary to Wilson's assertion, the prosecutor correctly stated that intent is an element of the charged offense and did not suggest that keeping a motor vehicle without consent is a per se criminal act.

We conclude that Wilson has not shown a plain error regarding the prosecutor's descriptions of Wilson's prior theft conviction.  *See Ramey*, 721 N.W.2d at 302 (explaining that "[a]n error is plain if it was clear or obvious" (quotation and quotation marks omitted)).  Even if she had, the district court instructed the jury that it must apply the rules of law provided by the district court and that the attorneys' arguments were not evidence.  Any plain error in the prosecutor's descriptions therefore did not substantially affect the jury's verdict.  *See id.*; *Taylor*, 650 N.W.2d at 207.

11

### C. Burden Shifting

Finally, Wilson argues that the prosecutor impermissibly shifted the burden of proof to her to prove her innocence. "Prosecutors improperly shift the burden of proof when they imply that a defendant has the burden of proving his innocence." *State v. Jackson*, 773 N.W.2d 111, 122 (Minn. 2009). Wilson cites the following statements as evidence of the prosecutor's burden shifting:

(1)     The intent element is met because Wilson knew she had kept the rental car beyond its due date without Dollar's permission and without a "valid reason" for not returning it;

(2)     "The evidence clearly shows [Wilson] knew she wasn't entitled to have the car any more yet she continued to possess it for her own use without excuse. That is an intent to wrongfully deprive Dollar of the car";

(3)     "She knows it's wrong to keep a car without excuse beyond the rental period";

(4)     "We know she didn't have a good excuse for possessing the car" beyond its due date;

(5)     "The crime here is aimed at the act of keeping the car too long with an intent to wrongfully deprive, it's for that period that she's continuing to use the car for her own benefit without having any valid reason why she didn't return it"; and

(6)     Wilson "kept the car for 91 days beyond [its] due date, she had no valid excuse for not returning it, [and] she wrongfully deprived Dollar of the car."

12

Wilson alleges that the prosecutor shifted the burden of proof by discussing Wilson's failure to explain her behavior. But, analyzing the closing argument as a whole, we conclude that the prosecutor did not shift the burden of proof to Wilson. *See Ture v. State*, 681 N.W.2d 9, 19 (Minn. 2004) (stating that "we look to the closing argument as a whole, rather than to selected phrases and remarks"). The prosecutor correctly explained the burden of proof, telling the jury that "[t]he [s]tate has the burden in this case to prove every element of the crime beyond a reasonable doubt." After addressing the burden of proof, the prosecutor discussed each element of the offense, including the requirement that Wilson act with intent to deprive Dollar of its possession of the vehicle. The prosecutor's statements about Wilson's lack of excuse address Wilson's decision to keep the rental car without seeking an extension as proof that she intended to wrongfully deprive Dollar of possession of the car.

Even if Wilson could show that the prosecutor's statements were plainly erroneous, the statements did not substantially affect the jury's verdict. *See Ramey*, 721 N.W.2d at 302. The district court instructed the jury that Wilson is presumed innocent, that the state has the burden of proving Wilson's guilt, and that the jury should disregard any statement from an attorney that differs from the district court's description of the law. "[A] prosecutor's attempts to shift the burden of proof are often nonprejudicial and harmless where, as here, the district court clearly and thoroughly instructed the jury regarding the burden of proof." *State v. McDonough*, 631 N.W.2d 373, 389 n.2 (Minn. 2001).

**Affirmed.**

13